Warden. Arguments not to exceed 15 minutes per side. Mr. Braga for the appellate. Good morning, your honors. As director of the Appellate Litigation Clinic at the University of Virginia School of Law, I'd like to introduce to the court this morning two third-year law students, Evan Ward and Lauren Howes, who satisfy the requirements for practice before this court and who have our client's permission to argue this appeal this morning. Good morning, your honors. May it please the court, my name is Evan Ward and I am counsel for the appellate, Alfred Sheffield. With the court's permission, I would like to reserve four minutes for rebuttal. Your honors, this case is about due process and Mr. Sheffield's right, once convicted, to be sentenced on the basis of information that accurately reflects his criminal record. Today, we ask this court to reverse the district court's denial of Mr. Sheffield's habeas petition with respect to his sentencing claim. We do so, namely, because we believe that court unreasonably dismissed the merits of Mr. Sheffield's sentencing claim after Mr. Sheffield has brought forward new evidence showing that the state relied on inaccurate information when it sentenced him as a fourth felony offender. I would like to first turn to the district court's mistake. The district court, in denying Mr. Sheffield's petition, fails to engage the substance of the new evidence he's brought forward. Instead, their dismissal is based on a misreading of the record below in which they repeat the mathematical error made by the state court. The district court leans heavily on the sentencing hearing transcripts, which can be found at page ID 620 in the record. The district court quotes the trial court as finding at least four qualifying offenses on Mr. Sheffield's record, but a closer reading reveals that it was only after the prosecution team introduced the habitual fourth offender notice does the sentencing judge find nothing to indicate he hasn't been charged with those offenses. Well, did counsel at the sentencing tell the court that he had consulted with your client and the client agrees that that's a correct statement of his convictions? Is there something like that in the record? Yes, Your Honor. Defense counsel tells the sentencing judge that I have gone over the habitual fourth notice, which contains the habitual fourth offender designation that was used to enhance Mr. Sheffield's sentence, apparently was not contained in the PSIR. The judge presiding over the sentencing hearing says, quote, whoever put those numbers in the record on the range did not include the habitual fourth line, just the standard conviction. And that's at page ID 638. And so they did have a chance to go over the PSIR, but if this habitual fourth offender form, which was a form that was quickly filed before Mr. Sheffield was even arrested, if that form was not in the PSIR, then Mr. Sheffield would not have known he was being sentenced as a fourth habitual offender. Well, once his counsel learned about that, was there any request to get an enlargement of time so that defense counsel could then go back and consider the PSIR in light of that enhancement? Counsel makes no such request. The prosecution team introduces the habitual fourth form in the middle of the sentencing hearing and the record doesn't indicate why, but defense counsel does not request additional time. Mr. Sheffield, as soon as he receives the paperwork after he's been sentenced, as soon as he receives the paperwork for his appeal, he immediately writes a letter to his appellate counsel raising the issue. He says to his initial appellate counsel in June 2010, I did not advise my trial attorney of the errors because I never knew about what convictions I was being charged with for the fourth degree habitual. I never had a chance to see the information of felony until I received the copy from you. And so while it didn't happen at the sentencing hearing, as soon as Mr. Sheffield becomes aware of it, he does attempt to notify appellate counsel. The district court also relies heavily on the state court's dismissal of Mr. Sheffield's motion for relief, which was dismissed on the merits. In that motion, the state court dismisses on the grounds that any combination of felonies could serve to designate Mr. Sheffield a fourth habitual offender. But your honors, our argument is that this is not a combination issue. This is a counting issue and our contention is the habitual fourth notice contains the three prior felonies. Mr. Sheffield has challenged several of the felonies on that form and even if only one prior felony is disqualified, we believe he merits resentencing as a third felony offender at least. Finally, the district court concludes its dismissal by saying that even if Mr. Sheffield is right and even if the evidence shows what he says it shows, his appeal still has no conclusion. No one up to this point has contested the evidence that Mr. Sheffield has brought forward. No one has said that there's anything wrong with this exhibit or that this exhibit does not show what he says it shows. So far, most of the arguments have concerned procedural issues. The state's brief below is focused almost entirely on procedural issues, but no one, not even the state, has said that these exhibits are in any way flawed or don't show what Mr. Sheffield argues that they show. Is a copy of the pre-sentence report in the record and was it shown to the Michigan courts and the district court here? There is definitely a copy of the fourth habitual form in the record. It's exhibit A at page ID, the exhibits start at page ID 852 and you'll see the three felonies on that sheet. The district court based its decision on the record, not the PSIR, which is not in the record, and so presumably the district court did get to look at this form. Okay, but that's what I was talking about. That's not in the record. You're saying it's not in the record or it is? The pre-sentence report is not in the record. That's what I'm talking about. Yes, sir, your honor. That report, which defense counsel and Mr. Sheffield would have had the opportunity to look at before sentencing, is not in the record and the district court's decision was not based on the PSIR. It was based on its reading of this sentencing hearing transcript, which we argue is inconclusive. Are you saying that the defendant had no opportunity to correct the misinformation, the incorrect information at sentencing, and if that's your opposition, when was the earliest time that the defendant at the lower court during the sentencing could have made an effort to correct that information and get that corrected information before the trial court, the sentencing court? Well, our argument is that he would not have had any opportunity to correct it before he was given his sentence because he hadn't been able to look at it yet. As soon as he sees the fourth habitual, which is, to be clear, a separate document from the PSIR, not included in the PSIR, according to the lower court, as soon as he sees that his sentence has been enhanced as a fourth habitual felony offender, he immediately writes to his appellate counsel in June of 2010 and seeks to raise the issue there. You'll see in the record below those letters, which are exhibits F, which I quoted earlier. Mr. Sheffield attempts to raise this issue with appellate counsel multiple times, his initial appellate counsel and his succeeding appellate counsel. The issue was dropped and the record doesn't indicate why, but his initial state appeal contains only one grounds, insufficient evidence to convict. He got a sentence of what, 40 to 60 years? Yes, Your Honor. What would he have gotten with three priors only, do you know? If Mr. Sheffield were re-sentenced as a third felony offender, the way sentencing works in Michigan, the top max level would have been multiplied by only 75%, so that would have been a max of 56 years. What? 66? 56, Your Honor. Okay. As a fourth felony offender, the maximum sentence he could have gotten was 75 years. He was actually sentenced a max of 60, as you said. What if he had two priors? He admits he had two priors, right? If he was re-sentenced as a second felony offender, if he were able to disqualify two prior felonies, the maximum sentence there would be only 47 years. What? 47 years, Your Honor. And we would again point out that even as a fourth felony offender, he was not given his maximum sentence. So if he were re-sentenced, there is always the chance that he would be re-sentenced under the max for a third felony offender or a second felony offender. The basement of that, is it what, up to 67? Is it 40 still as a basis for it? Is it 42 something else, or is the bottom part less than 40? Or do you know? As a fourth felony offender, as a second felony offender, the baseline would be the same, so it would be, I think, about 22 years. 22? Yes, Your Honor. Bottom, okay. His offense was graded out as containing a sentencing window of 22 and a half to 37 and a half years. And what the habitual offender designation does is simply multiply the potential maximum. And so the baseline minimum stays the same as a second felony offender, a third felony offender. We would note, as a fourth felony offender, that also includes something different than a third felony offender, a mandatory minimum of 25 years. And so that would also change, even if he were only able to remove one prior felony from this habitual offender notice. There was a statement in here that the trial court on the motion for relief from judgment confirmed that your client had been convicted of at least three qualified offenses. Is that not correct? We believe that the trial court there is basing that off of the same mistake that was made at the sentencing hearing. On Mr. Sheffield's motion for relief, which is the first time a court considers the exhibits he's brought forward, again, no real effort is made to actually investigate the factual issue surrounding these exhibits. The main one, Exhibit B, he puts forward showing that he was incarcerated in Denver, Colorado when he is supposed to have committed a concealed carry offense in the state of Michigan. No court, not the state court on the motion for relief or the district court below, has challenged that exhibit, its veracity, or the fact that it shows what he says it shows. And so we believe that is something that, at the very least, warrants a remand for further factual explanation. It's not something that would be difficult to clear up. And we believe, at the very least, Mr. Sheffield deserves a remand to explore that issue at the district court level and to have it properly considered by the district court. If there are no further questions, I thank you, Your Honors. Thank you, Counsel. Good morning. May it please the court. Andrea Christensen Brown of the Michigan Attorney General's Office, appearing on behalf of Warden Sherry Burt. The district court here rejected Mr. Sheffield's claim that the sentence was based on constitutionally inaccurate information. Instead, it found no error given the number of prior felonies that Mr. Sheffield did not contest during his sentencing proceeding. And the state would ask this court to affirm that decision. The court is certainly aware of the deferential standard of review. Just picking up where Mr. Sheffield's counsel left off, on this assertion or the evidence submitted that the defendant was in prison or in jail in Colorado at the time of one of those offenses, and he says that was never considered, so is it your position that that really is irrelevant because it wouldn't make any difference in light of the other numbers? What's that point? Not to be flippant, but that's exactly what it is. It just doesn't matter. And for purposes of being open and honest, it appears that that conviction, the CCW of 2005 that was listed in the habitual notice, it appears to me that that was an error, a technical error. But even if it won't change the sentence in this case, it would change and present a more accurate picture of the defendant's record, would it not? And isn't there some value in having that happen? I mean, you know, you could say, well, this person is never going to get out of prison, and so, you know, big deal. But assuming the person does get out, and assuming there is another interaction with the law, you've got then this error sort of baked into the record, and that is an inaccuracy that you say doesn't matter because of the end result, but in terms of an accurate picture of the defendant's criminal history, doesn't it matter there? Respectfully, I understand what Your Honor is saying, and that it is inaccurate, the fact that, however, if we also consider the pre-sentence investigation report, he has an extensive criminal history. So if we're looking at the accuracy of his criminal history, that accuracy also contains numerous other felonies, excluding the ones that were listed in the notice. So if we're looking at the entire picture, he has far more, far more than three, which is the only ones required for a habitual fourth sentencing enhancement. Well, is it correct as to what his counsel is saying, that the PSIR was not shown to the judge, or what's the situation on that? Regarding the record, the habitual fourth notice is in the record, but with respect to the pre-sentence investigation report in Michigan, those documents are considered confidential. So therefore, they're not presented in the normal means and made a part of a public record because they contain confidential information about dates of birth and family member information. However, that document was before the trial court who sentenced him, and before the trial court who analyzed the motion for relief from judgment, who in this case was actually the same judge. Well, I guess it can be disclosed to a court that's reviewing it, can it not? Absolutely. It absolutely is. It's just not made part of the public record. So that PSIR was in front of the sentencing court. And honestly, if we look at the sentencing transcript, the sentencing transcript is actually quite clear, that multiple times the trial court notes that there were four or more qualifying convictions. That's listed, at least I counted twice in the sentencing transcript, between page ID numbers 626 and 641. So those are highly illuminating. If the trial court knew that there were four, are you saying that the statement that counsel for Mr. Sheffield made, which is that Mr. Sheffield's counsel was not aware of that fourth one, in time to object to that, are you disagreeing with that? Or maybe- If that's what he said, I dispute that. That PSIR was given to counsel the morning of. The pre-sentence investigation report was given to him. And also, just for clarity, we discussed going over the complaint, which is where the fourth habitual notice and the offenses are listed. If the court would note, page ID number 637, defense counsel specifically states, and I'm going to quote this, judge, I have looked over the original, both complaint and information, at caveat for me, which is where the prior felonies are actually listed out, which is in the complaint. I have seen the prior convictions listed for Mr. Sheffield, have reviewed those with him in the past. Those are his record. It appears that that was an error. However, I believe that the reason that we didn't ultimately object, or that Mr. Sheffield's at any point didn't object to this, was because he had more than enough qualifying felonies to reach the habitual fourth status. And so, in light of that, what was the rationale for only presenting the fourth the morning of the sentencing? Well, Your Honor, it wasn't a presentation of the fourth, if you'll permit me to explain. It was producing then. Well, they're just listed in the pre-sentence investigation report is done just before sentencing. So the pre-sentence investigation report listed, while it's not in the record that was before the district court, it was in the court's record, because again, it's confidential. It listed far more than that. But if it's done, you say it's done just before the sentencing, but it has to be done in sufficient enough time for the other side to review it and make objections. So your statement would suggest that it's like immediately before, but there is some time between its preparation such that the other side has an opportunity to review it to be able to make those statements that you just told us about. I reviewed the record and we have no objections, right? Correct. I don't know how much time there is, but there is some. And if your client doesn't dispute numerous other felonies that are listed, then you wouldn't object to the court. In scoring prior record variable two, which is prior low severity felonies, which is what the court did here, it says four or more. He was scored 30 points for that prior record variable. That's where the four or more came from. So it's not that there were three listed in the complaint and notice. The PSIR just lists all of his prior felonies, not just the ones that the prosecutor listed in the notice. The state said in the district court proceedings that this was procedurally defaulted anyway, and the district court declined to deal with that. Quickly, what's the basis for your claim that this was just flat out defaulted? The basis for that claim is that on the motion for relief from judgment, that appellate counsel during the direct appeal did not raise this claim. Therefore, Mr. Sheffield has to show good cause and actual prejudice to excuse that default. And the problem here is with the actual prejudice, because the extensive criminal record that Mr. Sheffield has, which we see in the sentencing proceeding, does not allow this court to actually find actual prejudice. So that would be our argument for the procedural default. And I understand that the court below did not bother to discuss the procedural default. That is completely within his discretion. We do have a pretty good precedent that says that we don't entertain claims that have been procedurally defaulted. Correct. It's a procedural defense, which is why the state relied quite heavily on procedural default. The court obviously has a very strong grasp of the issues, but I just wanted to make one more point, and that's about Townsend v. Burke and United States v. Tucker. Those are the cases on which Mr. Sheffield is almost exclusively relying. And there is a distinguishing factor with those cases when compared to the case that we have here. In those cases, the court, specifically during sentencing, discusses the prior convictions that were listed out, notes several of them during the sentencing procedure, and says, because of these, I'm giving you X sentence. However, in this case, the emphasis that the trial court gave was not on the offenses listed in the habitual notice. It was on Mr. Sheffield's criminal record as a whole and the extensive criminal history that was listed in the pre-sentence investigation report, as well as the trial court's belief that Mr. Sheffield was far more responsible in this crime than he lied on during trial. So, with that being said, I'm more than happy to answer any further questions. If not, we would ask the court to affirm the district court's denial. Did the defendant have a chance to look at this record? His counsel here indicates that he didn't see it. And when counsel said, I've consoled my client and he agrees that these are his convictions, that's not correct. I would point the court to page ID number 637, which is where defense counsel says to the court that he has looked over the notice, the habitual notice, as well as the PSIR with his client that day, as well as in the past. Does he specify the habitual notice at that point? Yes, ma'am. That is on page ID 637. Does the court have any further questions? Thank you. Thank you, counsel. Rebuttal? Good morning, your honors. I have a few points in rebuttal. So the state has just made a major concession. In fact, and we believe that in light of that, just because this one, at least one offense, possibly two, it's not clear that it was considered appropriately in sentencing, that that alone would demand a remand for resentencing. But counsel has also made a point as to prejudice, because again, the state's primary point is that Mr. Sheffield should remain, should continue serving his 40 to 60 year sentence, essentially on the basis of procedural default, even though there is a major dispute from the record as to what offenses were actually considered. And as to prejudice, I think it's not clear from the record, your honors, again, because the PSIR is not part of the record, it's not clear what is in there and whether it matches what was in the habitual offender notice. It's worth noting that the sentencing transcript states that counsel, trial counsel, states in there that Mr. Sheffield has three or four offenses. And then there's some discussion about maybe he has at least four. The record, the sentencing transcript is very unclear and we would have no objection to this court taking a look at the PSIR or for that to be looked at after remand. What burden would it have been to get the PSR before the district court? Well, the state has it, your honor, so. So did you ask to have it before the court, though? I mean, I'm not understanding how a court can look at, can do a habeas proceeding looking at the record when it doesn't have the record in front of it. And I'm just trying to figure out whose job it is to make sure that the court has what it needs in order to do this. Well, the court apparently thought that the sentencing transcript was sufficient, but I don't, I mean, the state didn't provide the PSIR and it wasn't looked at by the district court and I don't have a better response to that as to why. What's the certificate of appealability on what is, what do we have to decide? Well, what we're asking is whether there's enough question regarding, given that he presented, that Mr. Sheffield has presented new evidence that hasn't been ruled on as to calling two of his convictions into dispute, whether this case should go back for remand. That's what we're asking this court to decide. Well, it looks like the Michigan courts and this court, we could all find it a whole lot easier if we saw the PSIR and you could see what these people, the courts have said that he's got three or four qualifying convictions, that's, why can't we do that? I agree, that can be done, Your Honor. Have you seen it yourself?  The PSIR? Have I seen it? Is that what you're asking? The one that was used here. I have not seen it, no. And actually, that's one of the things I think that makes this case unique is that these are easily verifiable claims and so this is something that would be easy to determine on a remand for resentencing, whether these, whether he had the sufficient number of prior convictions and whether that was, whether the habitual offender notice, which listed as the state conceded an erroneous offense, an erroneous prior, whether that had an impact on the sentencing proceeding. Because again, if he was, he has a due process right to be sentenced based on accurate information and if he was not. Well, if he waives the right, if in fact his counsel said my client's looked at it and he doesn't have any objection and it shows this, if it's misinformation, does your client have a right to come back in and say, well, even though I waived it, I don't waive it anymore? Your Honor, I see my time is up. Can I? Please do. Okay. With regard to waiver, Your Honor, a waiver has to be knowing and intelligent and in this case, I think at the very least, it's clear that it wasn't because he, Mr. Sheffield wouldn't have had anything to lose by bringing this up. You know, this isn't something that could be strategically construed one way or another. I mean, bringing this up only could have helped him. So the really, the only plausible reason why he wouldn't have mentioned this is because he didn't know about it at that time. Your Honor, if there's no further questions. There are not and we, of course, want to both thank you and compliment you on your performance here this morning. You're brave young people appearing here on the Ides of March. But we appreciate what you have done and we compliment you for it. The case will be submitted and there being no further cases to be argued this morning.